OPINION
{¶ 1} Appellant Randy Busse ("appellant") appeals his conviction, in the Licking County Court of Common Pleas, for one count carrying a concealed weapon. The following facts give rise to this appeal.
 {¶ 2} On September 5, 2005, Ohio State Trooper Kevin Milligan received a dispatch call concerning reports of a vehicle, with Oklahoma license plates, failing to maintain proper lanes of travel and failing to use a proper signal when changing lanes. Subsequently, Trooper Milligan observed appellant commit marked lanes violations. A camera, in Trooper Milligan's cruiser, captured some of the traffic violations. After stopping appellant's vehicle and making contact with him, Trooper Milligan learned from the dispatcher that appellant's driver's license had been suspended by the State of Oklahoma.
 {¶ 3} Trooper Milligan placed appellant under arrest, advised him of his rights and inquired about any contraband in the vehicle. Appellant informed Trooper Milligan there was a loaded firearm in the vehicle. Trooper Milligan did not see the firearm upon his initial approach to the vehicle. However, a subsequent inventory search of appellant's vehicle revealed the presence of a loaded firearm in the backseat. The firearm was located in an open briefcase, inside a camouflage holster, partially obstructed by a jacket.
 {¶ 4} The Licking County Grand Jury indicted appellant, on September 30, 2005, for one count of carrying a concealed weapon, one count of driving under suspension and one count of marked lanes violation. Appellant pled not guilty to the charges contained in the indictment. Thereafter, on December 21, 2005, appellant filed a motion to suppress. The trial court denied appellant's motion on January 12, 2006. This matter proceeded to a jury trial on April 12, 2006. Following deliberations, the jury found appellant guilty of the charge of carrying a concealed weapon. On April 17, 2006, appellant filed a motion for acquittal, which the trial court denied on May 1, 2006. On April 20, 2006, the trial court granted appellee's motion to dismiss the remaining counts of the indictment.
 {¶ 5} Following a pre-sentence investigation, on May 10, 2006, the trial court sentenced appellant to three years of nonresidential community control, a $500 fine and court costs. Appellant timely filed his notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 6} "I. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION TO SUPPRESS.
 {¶ 7} "II. THE TRIAL COURT ERRED, ABUSED ITS DISCRETION, AND/OR COMMITTED PLAIN ERROR, BY DENYING BRANCH II OF APPELLANT'S MOTION TO SUPPRESS EVIDENCE OF THE GUN, FILED DECEMBER 21, 2005.
 {¶ 8} "III. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR ACQUITTAL, PER O CRIM R 29(C).
 {¶ 9} "IV. THE TRIAL COURT ERRED AND/OR ABUSED ITS DISCRETION BY DENYING APPELLANT'S MOTION FOR ACQUITTAL, PER O CRIM R 29(A).
 {¶ 10} "V. THE JURY VERDICT IS NOT ADEQUATELY SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
 I, II {¶ 11} We will address appellant's First and Second Assignments of Error simultaneously as both concern the denial of his motion to suppress.
 {¶ 12} Prior to addressing the merits of appellant's assignments of error, we must determine what our standard of review is in regard to a trial court's judgment entered on a motion to suppress. In the case ofOrnelas v. United States (1996), 517 U.S. 690, the United States Supreme Court held that in reviewing a motion to suppress, the ultimate questions of whether an officer had reasonable suspicion to make an investigatory stop and whether an officer had probable cause to make a warrantless search are reviewed by an appellate court de novo.
 {¶ 13} In conducting the appellate review, the court reviews the trial court's findings of the facts of the case only for clear error and with due weight given to inferences the trial judge drew from the facts. This comports with the mandate in State v. Mills (1992), 62 Ohio St.3d 357, wherein the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence. Then, however, we proceed to review the trial court's application of law to those facts de novo. See, e.g., State v.Beard (Mar. 26, 1996), Athens App. No. 95CA1685.
 {¶ 14} In his First Assignment of Error, appellant argues the trial court erred when it denied his motion to suppress because the traffic stop by Trooper Milligan was unlawful. Appellant specifically challenges the fact that Trooper Milligan's video camera, in his cruiser, did not record all of the traffic violations upon which Trooper Milligan based his stop of appellant's vehicle. In State v. Ryan, Tuscarawas App. No. 2004 AP 03 0027, 2005-Ohio-555, we discussed the requirements for a valid traffic stop and stated:
 {¶ 15} "Before a law enforcement officer may stop a vehicle, the officer must have a reasonable suspicion, based upon specific and articulable facts, that an occupant is or has been engaged in criminal activity. State v. Gedeon (1992), 81 Ohio App.3d 617, 618. Reasonable suspicion constitutes something less than probable cause. State v.Carlson (1995), 102 Ohio App.3d 585, 590. `[I]f the specific and articulable facts available to an officer indicate that a motorist may be committing a criminal act, * * * the officer is justified in making an investigative stop.' Id. at 593. The propriety of an investigative stop must be viewed in light of the totality of the circumstances.State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus." Id. at ¶ 18.
 {¶ 16} At the suppression hearing, Trooper Milligan testified that he "* * * witnessed several marked lanes violations and a failure to signal lane change of the vehicle." Tr. Suppression Hrng., Jan. 11, 2006, at 8. The state played the videotape recording from Trooper Milligan's cruiser, at the suppression hearing, and Trooper Milligan narrated the traffic violations captured on the videotape. Specifically, Trooper Milligan described the videotaped traffic violations as follows:
 {¶ 17} "We're traveling westbound 70, goes off the left side of the roadway right there. That's the initial moving violation I observed there. He then will move to the right lane right here failing to signal his lane change. And then he will go off the right side of the road there. You can see he's over the white on the rumble strips, and as soon as that car moves over you'll see he's coming back on to the roadway. He's off there to the right side. And prior to catching up to him, I had witnessed other violations of him going off the left side of the roadway. Those three violations, or four, actually, violations is what's caught on tape. He's on the center line right there." Id. at 10-11.
 {¶ 18} On cross-examination, Trooper Milligan testified that although he observed appellant drive off the left side of the road three times, his cruiser video camera only recorded appellant driving off the left side of the road one time. Id. at 26. Trooper Milligan explained that the videotape "* * * when I copied it, didn't back up far enough or where the tape started from." Id.
 {¶ 19} Based upon the videotape evidence and Trooper Milligan's testimony, we find the trial court properly concluded the initial stop of appellant's vehicle was lawful. Although the video camera in Trooper Milligan's cruiser may not have captured all of the traffic violations made by appellant prior to the stop of his vehicle, the videotape does contain evidence of appellant's erratic driving. Further, Trooper Milligan testified to the traffic violations not recorded by his cruiser's video camera.
 {¶ 20} We accept the trial court's conclusion that appellant's violation of the traffic laws gave Trooper Milligan reasonable suspicion to stop appellant's vehicle because the factual findings made by the trial court are supported by competent and credible evidence. Thus, the trial court did not err when it denied appellant's motion to suppress on the basis that the initial stop of his vehicle was not valid.
 {¶ 21} Appellant maintains, in his Second Assignment of Error, the trial court erred when it denied his motion to suppress evidence of the firearm because his arrest was invalid. Appellant cites R.C. 4510.11(A), which provides, in pertinent part, as follows:
 {¶ 22} "No person whose driver's * * * license * * * has been suspended under any provision of the Revised Code, other than Chapter 4509. of the Revised Code, or under any applicable law in any other jurisdiction in which the person's license or permit was issued shall operate any motor vehicle upon the public roads and highways or upon any public or private property used by the public for purposes of vehicular travel or parking within this state during the period of suspension unless the person is granted limited driving privileges and is operating the vehicle in accordance with the terms of the limited driving privileges."
 {¶ 23} Appellant argues his suspension was an FRA suspension (Chapter 4509. of the Revised Code) and therefore, under R.C. 4510.11(A), he could not be arrested for driving under suspension. Thus, appellant concludes any evidence discovered as a result of the inventory search of his vehicle should have been suppressed by the trial court because the arrest was invalid.
 {¶ 24} We find the reference to Chapter 4509. of the Revised Code, in R.C. 4510.11(A), inapplicable to appellant. Appellant is an Oklahoma resident and his license was not initially suspended pursuant to R.C. Chapter 4509. of the Revised Code. The State of Oklahoma suspended his license. Further, R.C. 4510.11(A) provides that it applies to any person whose driver's license has been suspended "* * * under any applicable law in any other jurisdiction in which the person's license or permit was issued * * *."
 {¶ 25} Accordingly, because Trooper Milligan validly arrested appellant for driving under suspension, the subsequent inventory search of his vehicle was proper because "[inventory searches are a `well-defined exception to the warrant requirement of the Fourth Amendment.'" State v. Mesa (1999), 87 Ohio St.3d 105, 108, citingColorado v. Bertine (1987), 479 U.S. 367, 371. Therefore, the trial court did not err when it denied his motion to suppress on the basis that the search and subsequent discovery of a firearm, in his vehicle, was based upon an invalid arrest.
 {¶ 26} Appellant's First and Second Assignments of Error are overruled.
 III, IV {¶ 27} We will address appellant's Third and Fourth Assignments of Error simultaneously as both concern the trial court's denial of his motions for acquittal.
 {¶ 28} In State v. Conley, Licking App. No. 05 CA 60, 2006-Ohio-166, at ¶ 8, we explained:
"The standard to be used by a trial court in determining a Crim.R. 29 motion is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus: `Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.' An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard used to review a sufficiency of the evidence claim. SeeState v. Carter (1995), 72 Ohio St.3d 545, 553, 1995-Ohio-104. Thus, `[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus." It is based upon this standard that we review appellant's Third and Fourth Assignments of Error.
 {¶ 29} As to his Third Assignment of Error, appellant argues the trial court should have granted his motion for acquittal, pursuant to Crim.R. 29(C), because the trial court found Trooper Milligan's testimony incompetent under Evid.R. 601(C) as to the driving under suspension charge. Tr., Apr. 12, 2006, at 75. Thus, appellant concludes that because the testimony of the trooper was incompetent as to the driving under suspension charge and the firearm was discovered pursuant to an inventory search thereto, the carrying concealed weapon charge should have been dismissed.
 {¶ 30} Evid.R. 601(C) provides as follows:
 {¶ 31} "Every person is competent to be a witness except:
 {¶ 32} "(C) An officer, while on duty for the exclusive or main purpose of enforcing traffic laws, arresting or assisting in the arrest of a person charged with a traffic violation punishable as a misdemeanor where the officer at the time of the arrest was not using a properly marked motor vehicle as defined by statute or was not wearing a legally distinctive uniform as defined by statute."
 {¶ 33} Appellant argues that because the trial court struck Trooper Milligan's testimony as to the driving under suspension charge, and the firearm was discovered as a result of an inventory search incident to arrest for driving under suspension, the trial court should have also dismissed the carrying concealed weapon charge. We decline to apply Evid.R. 601(C) to felony charges, such as carrying a concealed weapon, because the rule specifically provides that it applies to traffic violations punishable as misdemeanors. Finally, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of carrying a concealed weapon proven beyond a reasonable doubt.
 {¶ 34} Appellant maintains, in his Fourth Assignment of Error, the trial court erred when it denied his motion for acquittal, pursuant to Crim.R. 29(A), because the evidence establishes the firearm was not concealed as the troopers saw the firearm while standing outside his vehicle. R.C. 2923.12(A)(2) provides:
 {¶ 35} "(A) No person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any of the following:
 {¶ 36} "(2) A handgun other than a dangerous ordnance;
 "* * *." {¶ 37} The evidence in the record establishes that upon his initial approach to appellant's vehicle, Trooper Milligan did not see the firearm. Tr. Apr. 12, 2006, at 83-85. Although the firearm was located in an open briefcase, testimony established that it was in a camouflage holster and partially obstructed by a jacket. Id. at 56. Clearly, the firearm was not visible as Trooper Milligan did not see it on his initial approach to appellant's vehicle.
 {¶ 38} Further, testimony established that the firearm was ready at hand because appellant merely had to unbuckle his seatbelt and reach in the backseat to access it. Id. at 57-58, 98. Based upon this evidence, we find viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of carrying a concealed weapon proven beyond a reasonable doubt. The trial court properly denied both motions for acquittal.
 {¶ 39} Appellant's Third and Fourth Assignments of Error are overruled.
 V {¶ 40} In his Fifth Assignment of Error, appellant contends the jury's verdict is not adequately supported by the manifest weight of the evidence. We disagree.
 {¶ 41} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See also, State v. Thompkins (1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."Martin at 175.
 {¶ 42} Appellant maintains his conviction is against the manifest weight of the evidence because the firearm was neither concealed nor ready at hand. Based upon the evidence discussed in appellant's Fourth Assignment of Error, we do not find the jury clearly lost its way in resolving conflicts in the evidence thereby creating a manifest miscarriage of justice entitling appellant to a new trial.
 {¶ 43} Appellant's Fifth Assignment of Error is overruled.
 {¶ 44} For the foregoing reasons, the judgment of the Court of Common Pleas, Licking County, Ohio, is hereby affirmed.
Wise, P. J. Hoffman, J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Licking County, Ohio, is affirmed. Costs assessed to Appellant.