[Cite as *Barnhill v. Ohio Liquor Control Comm.*, 2015-Ohio-3747.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Antoinette Daniels Barnhill [d.b.a. Cotton Club], | : | |
| | : | |
| Appellant-Appellant, | : | No. 15AP-30 |
| | : | (C.P.C. No. 14CV-7962) |
| v. | : | (ACCELERATED CALENDAR) |
| Ohio Liquor Control Commission, | : | |
| Appellee-Appellee. | : | |
| | : | |

D E C I S I O N

Rendered on September 15, 2015

*Antoinette Daniels Barnhill,* pro se.

*Michael DeWine*, Attorney General, *Paul Kulwinski*, and *Matthew Spitnale*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant-appellant, Antoinette Daniels Barnhill (d.b.a. Cotton Club) appeals from a judgment of the Franklin County Court of Common Pleas affirming the order of the Ohio Liquor Control Commission ("commission") denying Barnhill's liquor permit renewal. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} In September 2013, Barnhill, the owner of the Cotton Club, a bar located in the city of Lorain, Ohio, applied for renewal of a Class D-5-6 liquor permit for the business for the term expiring October 1, 2014. Lorain City Council passed a resolution objecting to the renewal of a liquor permit for the Cotton Club. The Ohio Department of Commerce, Division of Liquor Control ("division") denied Barnhill's request for renewal

of the liquor permit for the Cotton Club on the following grounds: (1) the place for which the permit was sought was located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or order would result from the renewal of the permit and operation by the applicant (R.C. 4303.292(A)(2)(c)); and (2) the applicant, any partner, member, officer, director, or manager thereof has shown a disregard for the laws, regulations, or local ordinances of the state (R.C. 4303.292(A)(1)(b)).

{¶ 3}   Barnhill appealed to the commission and a hearing was held in July 2014. As pertinent to this appeal, the following evidence was adduced at the hearing before the commission.

{¶ 4}   Sergeant Michael Failing of the Lorain Police Department testified that he has 20 years experience with the city and has been the city's crime analyst for the last 4 years.   He is familiar with the Cotton Club because of the "numerous reports of the violence that was going on there."  (Tr. 12.)  The Cotton Club is located in a "high-crime area."  (Tr. 15.)  From January 1, 2013 through March 30, 2014, there were 64 calls for police service linked to the Cotton Club location.  Only 9 of the 64 calls for police service were traffic related.  When there was a call during the late night hours to report a serious incident, such as "shots fired," all police on duty would converge on the scene, temporarily leaving the rest of Lorain without police coverage.  (Tr. 21.)  There are approximately 16 bars in Lorain, and the Cotton Club ranked as one of the highest in regard to the number of police calls, resulting in the city objecting to the renewal of its liquor permit.  The Cotton Club was permitted to serve alcohol until 2:30 a.m. each day, but would remain open until 4:30 a.m.  Sergeant Failing testified regarding specific events occurring at the Cotton Club, including gunshots and fights between patrons.  He additionally testified regarding the presence of another bar near the Cotton Club, which was also having crime issues.  The city objected to the renewal of the liquor permit for that bar, but the bar owner sold the bar.  Once the bar was sold and new management took over, the amount of crime associated with that bar lessened noticeably.  Unlike the Cotton Club, the other bar ceased operations at 2:30 a.m. each day.

{¶ 5} Detective Orlando Colon of the Lorain Police Department testified regarding his follow-up investigation of a shooting inside the Cotton Club which occurred

on December 9, 2012. Detective Colon received no cooperation from Cotton Club management as to that follow-up investigation despite repeated efforts to further investigate and discuss the matter with management. Management of the Cotton Club did not return Detective Colon's calls until he was investigating a homicide that arose from a dispute that began at the Cotton Club on January 1, 2013. In connection with that investigation, Detective Colon reviewed the surveillance video at the Cotton Club after the homicide. He observed the homicide suspect being let into the bar by the bouncer at approximately 3:00 a.m. Within one minute of the homicide suspect entering the bar, the crowd scattered and people ran out the front door. Detective Colon further observed "muzzle flashes at the exact same time everybody starts parting like the Red Sea." (Tr. 52.) Detective Colon noted at trial that the surveillance video showed the Cotton Club serving alcohol until the time of the shooting. The gunfight carried out to the parking lot of the Cotton Club. Ultimately, one of the individuals involved in the dispute was shot and killed at a gas station down the street from the Cotton Club.

{¶ 6} Barnhill testified regarding the significant steps she and her husband, Anthony Barnhill, undertook to try to make the Cotton Club a successful business. In her opinion, however, Lorain was not helpful enough in addressing the criminal problems linked to the Cotton Club. Barnhill typically was present at the business during the evening, and her husband managed the business until closing. Anthony Barnhill testified that he hired a professional security company to screen customers to ensure no weapons entered the business.

{¶ 7} Spreadsheets compiling calls for police service linked to the Cotton Club for the last three months of 2012, all of 2013, and the first three months of 2014, were admitted into evidence at the hearing before the commission. The information contained on these spreadsheets includes the date of the incident, time of day, and call type. Also included among admitted exhibits was a November 21, 2013 order of the commission fining Barnhill $1,000 based on the commission's finding that the Cotton Club had violated Ohio Adm.Code 4301:1-1-49 on January 27, 2013, because beer and/or intoxicating liquor was delivered and consumed on the permit premises between the hours of 2:30 and 5:30 a.m.

{¶ 8}   Based on the evidence presented at the hearing, the commission affirmed the order of the division.  Barnhill appealed the denial of her renewal application to the trial court.  The trial court affirmed the order of the commission.  Barnhill timely appeals.

## II.  Assignment of Error

{¶ 9}   Barnhill assigns the following error for our review:

> The trial court erred in affirming the commission's order as its decision was not supported by reliable, probative and substantial evidence and was not in accordance with law.

## III.  Standard of Review

{¶ 10} Pursuant to R.C. 119.12, a common pleas court reviewing an order of an administrative agency must affirm the order if, upon consideration of the entire record, the order is in accordance with law and is supported by reliable, probative, and substantial evidence.  *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992); *Colon v. Ohio Liquor Control Comm.*, 10th Dist. No. 09AP-325, 2009-Ohio-5550, ¶ 8.  To be reliable, the evidence must be dependable, i.e., that there is a reasonable probability that the evidence is true.  *Our Place, Inc.* at 571.  To be probative, the evidence must tend to prove the issue in question.  *Id.*  To be substantial, the evidence must have some weight, i.e., it must have importance and value.  *Id.*

{¶ 11} "The common pleas court's 'review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." ' "  *Colon* at ¶ 8, quoting *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955).  Although the reviewing court must "give due deference to the administrative agency's resolution of evidentiary conflicts, the findings of the agency are not conclusive."  *Id.* at ¶ 8, citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980).

{¶ 12} On appeal to an appellate court, the standard of review is even more limited. "In reviewing the court of common pleas' determination that the Commission's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion."  *Duncan v. Liquor*

*Control Comm.*, 10th Dist. No. 08AP-242, 2008-Ohio-4358, ¶ 10, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680 (10th Dist.1992). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Nonetheless, an appellate court does have plenary review of purely legal questions in an administrative appeal. *Colon* at ¶ 9, citing *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV. Discussion

{¶ 13} In her sole assignment of error, Barnhill argues the trial court erred in affirming the commission's order denying her liquor permit renewal because the order was not supported by reliable, probative and substantial evidence, or in accordance with law. We disagree with Barnhill's argument.

{¶ 14} Pursuant to R.C. 4303.271(A), a permit holder is entitled to a renewal unless good cause exists to reject the renewal application. *Aysar, Inc. v. Ohio State Liquor Control Comm.*, 10th Dist. No. 06AP-958, 2007-Ohio-1470, ¶ 18. "Good cause rejection is not restricted to a clearly identifiable incident but, instead, the division may examine the cumulative effects of adverse environmental conditions, objections to renewal, the impact on police enforcement, and other relevant circumstances." *3M, Inc. v. Liquor Control Comm.*, 10th Dist. No. 00AP-529 (Jan. 25, 2001). The specific grounds on which the division, and ultimately the commission, may deny a liquor permit renewal are set forth in R.C. 4303.292, and if any of the grounds the division cites for rejection are supported by reliable, probative, and substantial evidence, the commission's decision must be upheld. *Marciano v. Ohio Liquor Control Comm.*, 10th Dist. No. 02AP-943, 2003-Ohio-2023, ¶ 19. Thus, to achieve a reversal of the denial of a renewal request by the commission, an appellant must establish that the evidence was insufficient to prove all of the grounds forming the basis of the denial. *D.L. Lack Corp. v. Liquor Control Comm.*, 191 Ohio App.3d 20, 2010-Ohio-6172, ¶ 18 (10th Dist.).

{¶ 15} Here, Barnhill's application for renewal of her liquor permit was denied on the basis of R.C. 4303.292(A)(1)(b) and (A)(2)(c). Under R.C. 4303.292(A)(1)(b), the division may refuse to renew a liquor permit if it finds that the applicant, or any partner, member, officer, director, or manager of the bar has operated the bar "in a manner that

demonstrates a disregard for the laws, regulations, or local ordinances" of Ohio. R.C. 4303.292(A)(1)(b) does not require "a finding that the applicant has been charged or found guilty of any criminal or liquor violation." *Maggiore v. Liquor Control Comm.*, 10th Dist. No. 95APE06-713 (Mar. 29, 1996).

{¶ 16} The evidence in the record demonstrates the commission fined Barnhill $1,000 for allowing the delivery and consumption of alcohol after 2:30 a.m. on the business premises on January 27, 2013. Notably, this was not the only incidence of illegal serving of alcohol reflected in the record. Detective Colon testified that, based on his review of video surveillance in connection with his investigation of the homicide that occurred on January 1, 2013, he determined alcohol was being served at the Cotton Club the "entire time * * * until the shooting happened," which occurred after 3:00 a.m. (Tr.52.) Thus, there was evidence that alcohol was illegally being served at the Cotton Club on at least two occasions. Although Barnhill was not officially issued a citation in connection with the illegal serving of alcohol on January 1, 2013, evidence of the delivery of alcohol after hours demonstrates a disregard for the law. Further, the testimony that management at the Cotton Club did not cooperate with police in connection with its follow-up investigation of a shooting inside the Cotton Club reasonably demonstrates that management engaged in conduct that disregarded criminal problems associated with the business. *See Maggiore* (testimony that a neighbor went into a store to call police when a gunfight was occurring on the premises but that the employees told her they were not allowed to call police supported the commission's finding that the renewal application should be rejected based on R.C. 4303.292(A)(1)(b)).

{¶ 17} Pursuant to R.C. 4303.292(A)(2)(c), the division may refuse to issue, transfer, or renew a retail permit if it finds "[t]hat the place for which the permit is sought * * * [i]s so located with respect to the neighborhood that substantial interference with public decency, sobriety, peace, or good order would result from the issuance, renewal, transfer of location, or transfer of ownership of the permit and operation under it by the applicant." When interpreting R.C. 4303.292(A)(2)(c), courts focus on the location of the liquor premises rather than the employees who operate the business. *Marciano* at ¶ 28. The causation requirement for rejecting an application for renewal based on R.C. 4303.292(A)(2)(c) is "some connection between the permit premises and adverse

effects upon the surrounding area." *Id.* at ¶ 29. "[A] bar and its patrons' effect on the neighborhood are sufficient grounds for rejection of a liquor license, without the evidence concerning the inside operation of the premises." *Slammers Grill & Bar, LLC v. Liquor Control Comm.*, 10th Dist. No. 06AP-239, 2006-Ohio-6653, ¶ 12, citing *Buckeye Bar, Inc. v. Liquor Control Comm.*, 32 Ohio App.2d 89 (10th Dist.1972). But general, speculative evidence is insufficient to establish "substantial interference" with public decency, sobriety, peace, or good order. *K & M Deli, Inc. v. Liquor Control Comm.*, 10th Dist. No. 10AP-896, 2011-Ohio-6170, ¶ 23.

{¶ 18} The "substantial interference" evidence in this matter is neither general nor speculative. Sergeant Failing testified regarding the crime statistics he had compiled, demonstrating the Cotton Club was associated with a relatively large number of police calls as compared to other bars. The relatively high rate of service calls linked to the Cotton Club resulted in Lorain objecting to the renewal of the liquor permit for the business. The calls relating to the Cotton Club were for reports of fights, gunshots, disorderly conduct, assaults, and other criminal activity. For example, Detective Colon testified regarding a gun fight that began at the Cotton Club and ended in a homicide down the street. Some of the incidents leading to calls to the police for help, such as the ones involving gunshots, necessitated all officers on duty during the night shift to respond, leaving the remainder of Lorain, a city with a population of approximately 62,000, without police coverage. Barnhill presented no evidence disputing the severity or rate of the reported incidents linked to the Cotton Club.

{¶ 19} The foregoing evidence demonstrates there was good cause for the denial of Barnhill's request for a renewal of the Cotton Club's liquor permit and supports the specific findings, pursuant to R.C. 4303.292(A)(1)(b), that the permit business was operated in a manner that demonstrated a disregard for the law. Additionally, the location of the permit premises substantially interfered with public decency, sobriety, peace, or good order pursuant to R.C. 4303.292(A)(2)(c). Because the commission's decision denying Barnhill's renewal application, based on R.C. 4303.292(A)(1)(b) and (A)(2)(c), is supported by reliable, probative and substantial evidence, and is in accordance with law, we conclude the trial court did not err in affirming the commission's decision.

{¶ 20} Accordingly, we overrule Barnhill's sole assignment of error.

## V.  Disposition

{¶ 21} Having overruled Barnhill's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and SADLER, J., concur.

———————————————